YVONNE MOONEY, PERSONAL REPRESENTATIVE OF THE ESTATE OF ADA I. HAMILTON, DECEASED, APPELLEE, v. GORDON MEMORIAL HOSPITAL DISTRICT, A NEBRASKA POLITICAL SUBDIVISION, DOING BUSINESS AS GORDON COUNTRYSIDE CARE CENTER, APPELLANT.

682 N.W.2d 253

Filed July 2, 2004.   No. S-03-311.

Lyman L. Larsen, Neil B. Danberg, and Andrew C. McElmeel, of Stinson, Morrison & Hecker, L.L.P., for appellant.

Michael J. Javoronok, of Michael J. Javoronok Law Firm, and Patrick M. Connealy, of Crites, Shaffer, Connealy, Watson & Harford, for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

After a bench trial resulting in an unfavorable verdict, Yvonne Mooney, the plaintiff, filed a motion for new trial, based on her allegation that the district court judge had not been fair and impartial. The court granted Mooney's motion for new trial. The primary issues presented in this appeal are whether Mooney's objection to the judge's conduct was timely and, if so, whether Mooney's allegations were sufficient to warrant granting her motion for new trial.

## BACKGROUND

Mooney's mother, Ada I. Hamilton, died in 1999 following a fall at the Gordon Community Care Center, where she resided. Mooney, in her capacity as personal representative of her mother's estate, filed an action against the Gordon Memorial Hospital District (Gordon) pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997 & Cum. Supp. 2002), alleging that negligence by Gordon's employees had caused Hamilton's death.

The matter proceeded to a bench trial, after which the court found generally for Gordon, entered judgment in favor of Gordon, and dismissed Mooney's petition. Mooney filed a motion for new trial, which generally listed *all* of the grounds for a new trial set forth in Neb. Rev. Stat. § 25-1142 (Cum. Supp. 2002). However, the basis for the motion was specified in the sole piece of evidence offered in support of the motion: Mooney's own affidavit. Because the averments contained in that affidavit are essential to our analysis of the issues presented in this appeal, the substance of the affidavit is set forth below in its entirety.

THE UNDERSIGNED, being first duly sworn upon oath, deposes and says as follows:

1. I am the plaintiff in the above-captioned action.

2. Trial in this matter was held before Judge [Paul] D. Empson on January 8, 9, and 10, 2003.

3. My attorneys in this matter are Michael J. Javoronok and Patrick M. Connealy.

4. On Friday, January 10, 2003, Judge Empson had called for a luncheon recess, and I was still in the courtroom with

both of my attorneys when I overheard a conversation initiated by Judge Empson with Attorney Javoronok.

5. Opposing counsel was also present in the courtroom.

6. Judge Empson stated to Attorney Javoronok that he had met Mr. Javoronok's ex-wife, and that she had spoken highly of him. Attorney Javoronok's response was to the effect of, "Oh, that's good."

7. Judge Empson then stated that Mr. Javoronok's ex-wife told him that things just didn't work out for them. Mr. Javoronok advised that he had been the custodial parent of his daughter, and Judge Empson replied "I bet you learned a lot from her." Mr. Javoronok replied that he had learned nurturing and patience.

8. Mr. Javoronok then advised Judge Empson that he was engaged to be married. A strange look came over Judge Empson's face, he became rather animated, and he said, "Well, if you have done anything improper, then you should get down on your knees and ask your fiancee for forgiveness." Mr. Javoronok replied that he had done nothing to warrant such an apology. Judge Empson became even more animated, repeating the same, and then offered to provide what appeared to be marital and sexual counseling to my attorney, Mr. Javoronok, as well as cautioning him about what appeared to be pre-marital sex.

9. At this point, I felt very uncomfortable about Judge Empson and the trial. I left the courtroom before I could hear the remainder of the conversation.

10. I am a Christian, but it troubles me that Judge Empson was asking searching questions of my lawyer in an area that I felt was inappropriate and embarrassing to me.

11. I am concerned that Judge Empson decided the case on something other than the facts. It was clear that my mother was placed in the care of the defendant rest home, they did not care for her and she received catastrophic injuries which hastened her death. I cannot see anyway [sic] that the court could have ruled against me on the above case, unless it was something outside the evidence that was presented in the courtroom.

12. I feel that justice was not done, and I was done a disservice by Judge Empson's comments during the trial, particularly when he stated that he would ignore the testimony of our expert, Mary Hollins, and he sat through her videotaped deposition with his eyes primarily closed.

13. Judge Empson's warnings to Mr. Javoronok concerning sexual impropriety lead me to believe he was judging my attorney and not the facts being presented. His apparent dismissal of Mary Hollins' deposition after argument by Mr. Javoronok further exasperates this concern. Other comments that I cannot fully recall at this time were peppered with smart remarks that made me feel once again that justice was not done, and I did not have a fair and impartial judge.

FURTHER AFFIANT SAITH NOT.

At the hearing on the motion for new trial, Gordon specifically argued that the issues raised by Mooney's affidavit should have been objected to at the time and presented by a timely motion for mistrial. Nonetheless, the court ruled:

Okay. I'm going to grant the motion. Here's why: I am sure that counsel knows, as Mr. Javoronok knows, I was just yanking his chain. But his client doesn't know that. His client feels like she got ripped, and I take her affidavit to be true.

And so if she thinks she didn't get a fair trial, I want to make sure that she gets a chance to get a fair trial. . . .

Motion for new trial is granted.

Gordon asked that it be allowed to submit its own affidavits. The court permitted Gordon to submit affidavits, although the court indicated that it would not change its ruling. Gordon submitted the affidavit of Andrew McElmeel, counsel for Gordon, who related his recollection of the conversation described in Mooney's affidavit. McElmeel averred, in relevant part, that the conversation was "jovial and light-hearted in nature," that the judge had merely suggested that "the secret of a good marriage was to start with a clean slate and ask for forgiveness for anything done prior to the marriage," that Javoronok had not appeared to be offended by the judge's remarks, and that generally, "[t]he comment was nothing more than good-natured

banter, and appeared to be taken in that vein by everyone who was present."

The record does not reflect that any objection, or motion for mistrial or recusal, was made for any reason during the proceedings, including any of the instances discussed in Mooney's affidavit, prior to the motion for new trial.

The judge entered an order granting the motion for new trial and recused himself. The case was reassigned to another judge, who denied Gordon's motions for reconsideration or to alter or amend the judgment. Gordon filed this timely appeal.

## ASSIGNMENTS OF ERROR

Gordon's 13 assignments of error, restated, consolidate to form 5: The district court erred in (1) accepting Mooney's affidavit into evidence, (2) granting a motion for new trial on grounds that had not been raised during the course of the trial, (3) granting a new trial when no prejudice was shown, (4) not assigning the motion for new trial to another judge for disposition, and (5) failing to grant Gordon's motion to reconsider.

## STANDARD OF REVIEW

■ In reviewing a district court's order granting a new trial, the decision of the trial court will be upheld in the absence of an abuse of discretion. *Bowley v. W.S.A., Inc.*, 264 Neb. 6, 645 N.W.2d 512 (2002).

## ANALYSIS

■ We first turn to Gordon's second assignment of error, because our determination in that regard is dispositive of this appeal. As will be explained more fully below, the incidents forming the basis for Mooney's motion for new trial were known to the parties before the cause was submitted to the court for disposition. Yet Mooney made no complaint about the fairness or impartiality of the district court judge until after an adverse judgment was rendered. One cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong. *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003). The court abused its discretion in granting Mooney's motion for new trial when the issue presented by that motion was untimely.

Our disposition of this appeal is controlled by our decision in *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993). In *Wolfe*, a medical malpractice case, a verdict was returned in favor of the defendants, and the district court sustained the plaintiffs' motion for new trial based, in part, on the defendants' improper closing argument. On appeal, we concluded that the court had abused its discretion in granting a new trial when the plaintiffs had not made a timely objection to the alleged impropriety. *Id.* We noted the "controlling principle" that "one may not waive an error, gamble on a favorable verdict, and, upon obtaining an unfavorable result, assert the previously waived error." *Id.* at 343, 506 N.W.2d at 697. Accordingly, we concluded that in order to preserve the alleged misconduct as a ground of appeal, the plaintiffs were required to make an objection no later than the conclusion of the closing argument, and reversed the district court's order granting a new trial. See, also, *Martindale v. Weir*, 254 Neb. 517, 577 N.W.2d 287 (1998); *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998).

■ Those principles are equally applicable to the situation presented in the present case. The fact that the alleged misconduct in this case was committed by the trial court, instead of counsel, does not distinguish this situation. "One cannot know of improper judicial conduct, gamble on a favorable result by remaining silent as to that conduct, and then complain that he or she guessed wrong and does not like the outcome." *State v. Jenson*, 232 Neb. 403, 405, 440 N.W.2d 686, 688 (1989). In fact, we specifically noted in *Wolfe* that "[i]n point of fact, we do not permit a party to gamble on a favorable result and later complain of a waived error *even where the misconduct spews from the mouth of the trial judge.*" (Emphasis supplied.) 244 Neb. at 344, 506 N.W.2d at 697, citing *Pitt v. Checker Cab Co.*, 217 Neb. 600, 350 N.W.2d 507 (1984).

Nor is this case distinguished by the fact that this was a bench trial, instead of a jury trial. Mooney was still obligated to make a timely objection to any perceived misconduct by the trial judge, and if the judge's fairness or impartiality was called into question, Mooney should have moved for recusal prior to submitting the case for disposition. See *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995), *disapproved on other grounds, Gibilisco*

*v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). As previously noted, Mooney made no timely objection or motion based upon the incidents that formed the basis of her motion for new trial. Specifically, Mooney's affidavit discusses a conversation that occurred between the trial judge and counsel during the noon recess on the final day of trial. No mention of this conversation appears in the record prior to submission of the cause. The bill of exceptions shows that after the noon recess, Mooney concluded cross-examination of the defendant's expert witness, and redirect and recross-examination were had. Mooney was herself recalled to the stand for further direct examination. Before the cause was submitted, both parties made motions to dismiss which were denied, and closing arguments were made. In short, the record establishes that Mooney had ample opportunity to object to the court's conduct after the recess, but did not do so.

Mooney's affidavit also claims that the trial judge "stated that he would ignore the testimony of our expert, Mary Hollins, and he sat through her videotaped deposition with his eyes primarily closed." This appears to refer to the judge's remarks, made on the record, which questioned the relevance of the expert's deposition testimony. In response to Gordon's objection to the deposition, the trial judge stated that the evidence was "singularly unhelpful," but that he had been "listening intently" for evidence that was pertinent to the issues presented in the case. In ruling on the objection, the judge informed the parties, "So I'm not going to kick it out, but I'm letting you know how much weight it has. The objection is overruled. It didn't help me much, if at all." Mooney's counsel responded to this ruling by stating, "I suppose we'll argue that later." The judge replied, "Yeah, you can argue it to your heart's content. Well, almost."

We assume, based on our review of the bill of exceptions, that this is the exchange to which Mooney's affidavit referred, although the judge's comments to the parties were directed at the issues presented, and would not appear to call the judge's fairness or impartiality into question. Mooney's counsel, instead of objecting or asking for the judge's recusal, simply declared his intent to argue to the court about why the evidence should be given more weight. This did not preserve or raise any question of bias on the part of the trial judge.

The only other allegation of misconduct contained in Mooney's affidavit is her reference to "[o]ther comments" made by the trial court that "were peppered with smart remarks." Neither Mooney's affidavit, nor the appellee's brief, make any effort to identify for this court what those "smart remarks" might have been. We have nonetheless examined the record in search of those instances, both to determine whether timely objections were made, and to evaluate the possibility of plain error. See *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004) (plain error may be asserted for first time on appeal or noted by appellate court on its own motion).

We have stated that a trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *State v. Hubbard*, 267 Neb. 316, 673 N.W.2d 567 (2004); *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). Our application of this objective standard to the record in this case reveals no conduct on the part of the trial judge that would satisfy this standard, much less any comments that were the basis of a timely objection or motion for recusal.

In short, to the extent that we have located references in the record to the incidents forming the basis for Mooney's motion for new trial, we cannot locate any corresponding objection, or motion for recusal or mistrial. Based on *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993), we conclude that the court abused its discretion in granting Mooney's motion for new trial where Mooney was aware of the basis for that motion during trial, gambled on a favorable judgment from the court, and, upon obtaining an unfavorable result, asserted the previously waived error. We conclude that Gordon's second assignment of error has merit and is dispositive of this appeal. Having so concluded, we need not consider Gordon's remaining assignments of error. See *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003).

## CONCLUSION

The district court erred in granting Mooney's motion for new trial after Mooney failed to object during trial to the judge's

alleged misconduct. We reverse the district court's order granting a new trial, and remand the cause with the direction that the district court reinstate the order of judgment of dismissal originally filed on January 27, 2003.

REVERSED AND REMANDED WITH DIRECTION.

WRIGHT, J., participating on briefs.