Michael D. Huffman, appellee, v. Greg E. Peterson
and Lynda J. Peterson, appellants.
718 N.W.2d 522

Filed July 28, 2006.    No. S-04-941.

John D. Rouse and Gregory C. Damman for appellants.

Andrew D. Strotman and Trent R. Sidders, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Ben Justus James III conveyed adjoining residential lots to Greg E. Peterson (Peterson) and Lynda J. Peterson, as well as Michael D. Huffman. A dispute between the Petersons and Huffman arose after a survey conducted on the property revealed that Huffman's driveway encroached on the lot owned by the Petersons. Huffman filed an action to quiet title to the property in his favor, and in response, the Petersons filed an action seeking to eject Huffman from the property. Applying the common grantor doctrine, the district court determined that the boundary of Huffman's lot encompassed Huffman's driveway and quieted title to the disputed property in his favor. The Petersons challenge the court's application of the common grantor doctrine. For the following reasons, we conclude that the common grantor rule was applied correctly, and we affirm the court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 1987, Pioneer Partners, a partnership established by Robert Kerrey and James, acquired the property composing Pioneer Estates in Lancaster County, Nebraska. In 1989, Kerrey assigned his right, title, and interest in Pioneer Partners and conveyed his interest in Pioneer Estates to James.

In 1990, James had the main road, known as Westbrook Circle, built on the property, along with a driveway to his house, located at 3001 Westbrook Circle, also known as Lot 10, Block 2, Pioneer Estates (Lot 10). In 1992, James conveyed a life estate in the adjacent property to his father, who lived on the adjacent property, located to the east of Lot 10 at 3000 Westbrook Circle, Lot 9, Block 2, Pioneer Estates (Lot 9), until 1995, when James sold Lot 9 to the Petersons, the appellants in this action. At that time, James' father conveyed his life estate to the Petersons, and James, individually and as partner of Pioneer Partners, conveyed his remainder interest in the property to the Petersons. Thus, the remainder merged into the life estate, leaving the Petersons with title in fee simple. See *Watson v. Dalton*, 146 Neb. 78, 18 N.W.2d 658 (1945).

James lived next to the Petersons on Lot 10 until June 1999, when he sold Lot 10 to the appellee, Huffman. James never had a survey performed on Lots 9 and 10. Similarly, the Petersons and Huffman did not have surveys of the lots performed prior to their purchases in 1995 and 1999, respectively.

In August 1999, Huffman had his property surveyed in order to obtain financing. In May 2000, Huffman used the survey to obtain a building permit for a new detached garage and noticed an indication on the document that his driveway was encroaching on the Petersons' property, Lot 9. Huffman then told Peterson and James about his discovery. Prior to Huffman's discovery, Huffman, Peterson, and James had all assumed that Huffman's driveway was located entirely on Lot 10.

In October 2001, Huffman and Peterson met to discuss potential options for remedying the encroachment. Huffman offered to purchase the encroaching land or arrange for an easement, but Peterson indicated that the encroaching driveway should be moved from his property. In November 2002, Huffman filed an action against the Petersons, requesting the court to quiet title in the disputed property pursuant to the common grantor theory. Under that theory, Huffman alleged that at the time of the parties' respective conveyances, Huffman and the Petersons, along with James, intended a metal post and a tree located between the properties to mark the boundary between Lots 9 and 10. The Petersons filed an answer and cross-petition, asserting an ejectment action.

Following a bench trial, the district court ordered title to the disputed property quieted in Huffman's favor. The court found that the parties acquired their adjacent properties from a common grantor with an "understanding that the boundary between the lots was marked by a north-south line running through a metal T-post and a cottonwood tree east of the driveway leading to [Huffman's] residence." Pursuant to the common grantor doctrine, the court found such line to be the boundary between the two properties.

## ASSIGNMENTS OF ERROR

The Petersons assign that the district court erred in (1) finding that the Petersons and Huffman acquired their properties from a

common grantor; (2) assuming the parties acquired their properties from a common grantor, finding that the common grantor conveyed the subject lots to Huffman and the Petersons with reference to " 'a boundary line then marked on the ground' "; (3) finding a small tree and movable metal post to be monuments for purposes of the common grantor rule; and (4) failing to eject Huffman from their property.

## STANDARD OF REVIEW

A quiet title action sounds in equity. *Ottaco Acceptance, Inc. v. Huntzinger*, 268 Neb. 258, 682 N.W.2d 232 (2004). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005).

## ANALYSIS

We first note that boundary disputes are not to be determined in a quiet title action. Rather, boundary disputes are properly brought as an action in ejectment or pursuant to Neb. Rev. Stat. § 34-301 (Reissue 2004). *Rush Creek Land & Live Stock Co. v. Chain*, 255 Neb. 347, 586 N.W.2d 284 (1998). But when parties pursue a boundary dispute as a quiet title action without objection, the mode of procedure is no longer in question. *Id.*

The common grantor rule provides that where conveyances from a common grantor to adjoining landowners describe the premises conveyed by lot numbers, but adjoining owners purchase with reference to a boundary line then marked on the ground, the boundary line, as marked on the ground by the common grantor, is binding upon such adjoining landowners and all persons claiming under them irrespective of the length of time which has elapsed thereafter. See *Phillippe v. Horns*, 188 Neb. 304, 196 N.W.2d 382 (1972). This equitable rule is designed to ascertain the intention of the parties with respect to the location of premises described by lot number in a conveyance which is executed by a grantor who conveys only part of an area of land

owned by him. *Kraus v. Mueller*, 12 Wis. 2d 430, 107 N.W.2d 467 (1961).

The Petersons argue that the facts of this case and the testimony given at trial do not support the district court's application of the common grantor rule. Specifically, the Petersons challenge the court's findings (1) that Lots 9 and 10 were conveyed by a common grantor and (2) that the parties acquired the lots with the understanding that the boundary between their properties was marked by a line east of Huffman's driveway, running through a metal T-post and a cottonwood tree. In that regard, the Petersons question the evidence of both the understanding of the parties and the sufficiency of the markers. We address each argument in turn.

*Lot 9 and Lot 10 Were Conveyed by Common Grantor.*

The Petersons first assign that the district court erred in applying the common grantor rule because Lots 9 and 10 were not conveyed by a common grantor. While Lot 10 was conveyed to Huffman by one grantor—James—the Petersons assert that Lot 9 was conveyed to the Petersons by three separate grantors—James, James' father, and Pioneer Partners. Thus, according to the Petersons, the common grantor doctrine does not apply because the grantor of Lot 9 was not the same as the grantor of Lot 10.

Huffman argues that Lot 9 was conveyed to the Petersons by James, just as Lot 10 was conveyed to Huffman by James. Huffman asserts that James developed the properties at issue and constructed Huffman's driveway prior to conveying a life estate interest in Lot 9 to James' father and that, thus, the common grantor rule is not precluded by the interest later acquired by James' father. In addition, Huffman argues that because James was the sole partner in Pioneer Partners at the time of the conveyance of Lot 9, the partnership was not a separate entity or grantor in the conveyance.

James and Kerrey originally acquired title to the property at issue in the name of their partnership, Pioneer Partners, and later, James became the sole partner in Pioneer Partners and acquired sole ownership of the property at issue through an assignment and quitclaim deed from Kerrey. Thus, James acquired Lots 9 and 10 in the same transaction. Subsequently, James conveyed

Lot 9 to the Petersons, naming as grantor himself, individually, and as partner of Pioneer Partners. Several years later, James conveyed Lot 10 to Huffman, naming only himself, individually, as grantor.

Based on these facts, the Petersons argue that the lots were not conveyed by the same grantor. However, in applying the common grantor rule, the focus is on unity of title. If title to the property is actually held by the same party, the name in which such party conveys the property is irrelevant. In other words, James acquired ownership of the two parcels at issue in the same transaction, in the same name. Equity looks through form to substance. Thus, a court of equity goes to the root of the matter and is not deterred by form. See *Dillon Tire, Inc. v. Fifer*, 256 Neb. 147, 589 N.W.2d 137 (1999). Even though James ultimately drafted the conveyance documents using different language—one in his name alone, and one in his name along with the name of his partnership—the lots were owned by him in the same capacity. Thus, the language of the deed documents does not prevent proper application of the common grantor rule.

Furthermore, Lots 9 and 10 were originally owned by James in their entirety, giving him the power to determine the location of the boundary between the properties. The fact that James conveyed a life estate interest in Lot 9 to his father prior to conveying complete ownership of Lot 9 to the Petersons does not change the fact that James was the common grantor of the two parcels because James owned both parcels before conveying any interest at all.

For example, the common grantor rule could have applied had James conveyed a fee simple title in Lot 9 to his father, making his father the original grantee under the common grantor rule; similarly, the common grantor rule would have applied if James had not conveyed any interest in Lot 9 to his father, making the Petersons the original grantees under the rule. It would make little sense to refuse to apply the doctrine to facts presenting an initial conveyed interest that lies between those situations. All that matters for purposes of determining whether a common grantor is present is whether that grantor held title to both disputed parcels, such that the grantor had the power to establish the boundary between the two parcels.

Here, James held title to Lot 9 in fee simple before conveying a life estate to his father, but retained a remainder interest. James conveyed that remainder interest directly to the Petersons and also sold the life estate on his father's behalf. The Petersons' unified title to Lot 9 came from both James and James' father, but part of that title—the remainder interest—was conveyed directly from James. On the whole, the purchase was effectively negotiated and completed as a conveyance from James to the Petersons.

Most important, the nature of the Petersons' purchase was such that James was in a position to establish the boundaries of the property, and the Petersons were in the position of relying on James' description of the boundary. The fact that James' father first held part of the title to Lot 9 does not change the fact that the Petersons were the original grantees of the remainder of the title, and the first to obtain a unified title subsequent to James. The intent of the common grantor doctrine is to give effect to the original grantor's representation of the boundary to property. Based on this evidence, the district court did not err in concluding that James was a common grantor with respect to his conveyance to the Petersons. The Petersons' first assignment of error is without merit.

*Huffman Proved Parties' Understanding of Boundary Line.*

The Petersons next argue that Huffman failed to prove that the parties purchased their lots with the understanding that the boundary between the properties was marked by a metal T-post and a cottonwood tree to the east of Huffman's driveway and that such markers were sufficient to establish the boundary. The Petersons argue that without evidence of this shared understanding, the common grantor doctrine does not apply.

The metal post identified by Huffman as a marker of the boundary between Lots 9 and 10 was placed in the ground by James before the Petersons and Huffman acquired their respective lots. James testified that the post was meant to stabilize one of several telephone poles that had been placed as a barrier along the east side of the driveway in an effort to keep traffic from going beyond the roadway and onto the property then occupied by James' father. Peterson testified that the post was in

place at the time he purchased Lot 9 in 1995 and remained in place when Huffman purchased Lot 10 in 1999.

Huffman testified that prior to his purchase of Lot 10, James accompanied him on a walk around the perimeter of the lot to show Huffman the boundary lines. Huffman stated that he and James started at the northeast corner of Lot 10 where the metal post was located and that James represented the post to be the "original northeast property stake."

The cottonwood tree alleged to be a boundary marker between Lots 9 and 10 was planted by James in 1991 or 1992 on the east side of the Lot 10 driveway before the Petersons and Huffman acquired their lots. Huffman testified that during his walk with James around the perimeter of Lot 10, James stated that the tree was planted on the property line and that Peterson "knows about it, it's no big deal." Huffman also explained that prior to discovering the encroachment, Peterson asked his permission to landscape around the tree.

Peterson, however, testified that another post was located at the fence line to the south of Lots 9 and 10. Peterson stated that the post was located in the southwest corner of his property when he purchased it and described the post as a "wood lath painted pink [with] a pink flag." As shown on a map of Lots 9 and 10 entered into evidence at trial, this post is in line with the platted boundary between the lots. Huffman testified that during his walk with James around Lot 10, James indicated that the southeast boundary marker was near a common gate into a city park but, due to the heavy growth in the area, told Huffman of the boundary, "it's around here."

Huffman's testimony regarding James' representations that the boundary between Lots 9 and 10 was marked by the post and tree was disputed at trial. James testified that the post was installed for the sole purpose of preventing the telephone poles from rolling and not to mark a boundary. James stated that he never represented that the post marked the boundary between the lots. When asked how long the post remained in place, James explained that he tried to pull the post out of the ground when he removed the telephone poles but was unable to remove the post. Further, James testified that while walking the perimeter of Lot 10 with Huffman, he only referred to survey stakes as boundary

markers. Peterson testified that he purchased Lot 9 based on the legal plat and that James told both Huffman and him that the post had nothing to do with the boundary.

Although Peterson and James contradicted Huffman's testimony regarding James' representations of the boundary between Lots 9 and 10, the credibility of witness testimony and weight to be given the testimony are questions for the trier of fact. See *In re Guardianship of Robert D.*, 269 Neb. 820, 696 N.W.2d 461 (2005). In this case, the court saw and heard the testimony of Huffman, Peterson, and James and, based on its judgment, gave greater weight to Huffman's testimony. An appellate court will consider the fact that the trial court saw and heard the witnesses and observed their demeanor while testifying, and will give great weight to the trial court's judgment as to credibility. *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006). The common grantor rule would be of little use if it could be defeated simply by the assertion of contrary accounts, without any regard for whether those accounts are credible or persuasive to the fact finder.

We also note the testimony of Peterson and James that until the encroachment was discovered, both assumed that the entire driveway was located on Lot 10. Further, although there was no direct testimony that James pointed out the tree and post at the time of the conveyance of Lot 9 to the Petersons, the subsequent conduct of the Petersons in occupying Lot 9 from 1995 until 2000 and observing a boundary along the east of the driveway supports an inference that they purchased Lot 9 with the understanding that the west boundary of the premises ran through the tree and post. See *Kraus v. Mueller*, 12 Wis. 2d 430, 107 N.W.2d 467 (1961). Although the tree and post may not have been placed with the intent that they serve as boundary markers, according to Huffman's testimony, James used them in that capacity when conveying the property. We find nothing in the law to preclude fixed, visible landmarks from being used to define a boundary line, even if that was not their original purpose.

The evidence establishes that the landmarks Huffman testified had been identified by James as boundary markers were apparent upon visual examination of the property when Lots 9 and 10 were conveyed to the Petersons and Huffman. The parties were

under the impression that the boundary between Lots 9 and 10 ran east of Huffman's driveway, as evidenced by their subsequent conduct on the properties and mutual surprise after discovering that the plat specifications indicated otherwise. This evidence, giving weight to the district court's evaluation of the credibility of the witnesses, is sufficient to prove that the common grantor doctrine is applicable. Thus, we conclude that the district court properly applied the common grantor doctrine, quieting title to the disputed property in Huffman. We find the Petersons' second and third assignments of error to be without merit.

The Petersons also assign that the district court erred in failing to eject Huffman from their property. Having concluded that the court correctly quieted title in the disputed property in favor of Huffman, we naturally conclude that the court did not err in dismissing the Petersons' ejectment action and reject the Petersons' final assignment of error.

## CONCLUSION

The district court correctly applied the common grantor rule, quieting title in favor of Huffman. Therefore, we affirm the judgment of the district court.

AFFIRMED.

HENDRY, C.J., and WRIGHT, J., not participating.