DENNIS DAMROW, APPELLANT, V. MARLIN
MURDOCH ET AL., APPELLEES.
739 N.W.2d 229

Filed September 4, 2007. No. A-05-1200.

Michael J. Synek for appellant.

Jeanelle R. Lust and Carly J. Beusch, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellees.

INBODY, Chief Judge, and CARLSON and MOORE, Judges.

MOORE, Judge.

## I. INTRODUCTION

Marlin Murdoch, Duane Murdoch, Clyde Lueking, Jerry Lueking, Robert Lueking, and Dr. Thomas Smith (the Appellees) filed a motion in the district court for Buffalo County, seeking confirmation of an arbitration award under Nebraska's Uniform Arbitration Act. The arbitration action was initiated by Dennis Damrow (Damrow) against the Appellees and Martin Damrow. Damrow opposed the Appellees' motion in the district court. The court granted the motion to confirm the arbitration award and entered judgment against Damrow. Damrow appeals. For the reasons set forth herein, we affirm.

## II. BACKGROUND

Damrow served as manager for a cattle feedlot near Holdrege, Nebraska. Shareholders of the feedlot corporation (CFI) included Damrow, the Appellees, and Martin Damrow.

On October 11, 1999, the shareholders of CFI executed a shareholder repayment agreement. The agreement stated that the shareholders entered into the agreement to provide for a procedure to be used to determine what, if any, amounts were owed by the individual shareholders to CFI and to provide for repayment of such amounts to CFI. The agreement included the following provision regarding arbitration: "If no agreement can be reached by the parties concerning any individual shareholder's liability, such issue shall be submitted to binding arbitration subject to the Rules of the American Arbitration Association using up to three arbitrators." The agreement also provided:

> The Shareholders hereby promise and agree to not plead the statute of limitations as a defense to repayment to [CFI] of any amount determined due hereunder and hereby waive the statute of limitations, estoppel and laches, as to any and all claims for repayment to [CFI] determined

due hereunder for a period of two years from the date of this Agreement.

Because the shareholders did not reach an agreement concerning individual shareholder liability, Damrow, who was then represented by counsel, initiated an arbitration proceeding with the American Arbitration Association (AAA), naming the other shareholders as respondents. That demand for arbitration is dated July 21, 2000. Damrow sought a determination of amounts which might be owed to CFI by its shareholders and provision for the repayment of sums determined due. Damrow estimated for purposes of the demand that the amount in controversy was likely in excess of $900,000. Damrow requested that the arbitration hearing be held in Kearney, Nebraska.

Damrow retained new counsel in approximately May 2001, and in a letter dated May 4, 2001, Damrow's newly retained attorney notified the AAA and the Appellees' attorney of his retention by Damrow and requested that they send correspondence involving Damrow to his office. The letter also stated, "It is with great regret that . . . Damrow finds himself in the financial position not to be able to continue with the arbitration."

On June 4, 2001, attorneys for the Appellees and CFI met in Omaha, Nebraska, at the offices of the law firm representing the Appellees. The transcription from this proceeding includes opening remarks from the Appellees' attorney indicating that June 4 was the first day set for a scheduled arbitration hearing, that the AAA had asked the parties to notify it of a mutually agreeable location for the hearing, that the law firm had received no instructions from the AAA as to where the hearing was to convene, and that the firm had notified the AAA of the availability of its offices as a possible location. The attorney stated her presumption that absent an order from the AAA, the hearing was to proceed. Damrow was not present at this hearing or proceeding; nor were any arbitrators present. The participating attorneys proceeded to question witnesses under oath, and testimony was recorded by a court reporter. Exhibits referenced during the course of the proceeding, including an order scheduling the June 4 hearing, are not included in the record before us.

The AAA notified the parties, including Damrow, of a hearing to occur in Kansas City, Missouri, on February 1, 2002. The

notice of this hearing is not included in the record before us, but the parties agree that the statutory notice was given for the scheduled February 2002 hearing. On the date of the scheduled hearing, the Appellees' attorney called the AAA by telephone to indicate that she could not attend because of weather conditions. The hearing was rescheduled to March 8 in Kansas City. The record contains a letter dated March 6, 2002, from the AAA case manager to the parties. The body of the letter states, "This will serve as a reminder the hearing in the [arbitration] matter is scheduled to commence on March 8, 2002, per the enclosed Notice of Hearing." The upper and lower portions of the letter contain printed notations indicating that the letter was transmitted to Damrow and Martin Damrow via first class mail and United Parcel Service next day air delivery and to the Appellees' attorney and the arbitrators via telecopy only. The attached notice of hearing states the time, date, and location of the hearing; lists the names of the arbitrators; and also contains a notice stating in part, "The arbitrators have arranged their schedule and reserved the above date(s) based on the advice of the parties." Further information regarding the rescheduling of the hearing from February to March is set forth in the analysis section below.

Damrow did not attend the March 8, 2002, arbitration hearing. The Appellees participated in the March 8 hearing, were represented by counsel, and offered evidence in support of their positions, including the transcription of the testimony taken at the office of their attorney in June 2001.

Counsel for the Appellees sent a letter to the AAA dated March 29, 2002, which, among other things, included a demand that the arbitration panel's decision be released "no later than April 7, 2002, as previously ordered by you." The letter also stated that if the AAA failed to release the decision by that date, the Appellees would bring suit against the AAA "for its breach of its duty to administer this arbitration in accordance with its own rules and its representations to [the Appellees] that it would do so." The letter does not contain any notations indicating that a copy was sent to Damrow.

On April 3, 2002, the AAA received a letter from Damrow which described his efforts to obtain access to certain records

of CFI and stated, "With the total lack of access to any and all the records it has become impossible for me to proceed with the Arbitration." Damrow's letter also stated, "As I have informed you by phone[,] I do not have the financial resources to proceed in the Arbitration and the fact remains that the 'STOCKHOLDER REPAYMENT AGREEMENT' has expired as of October 11, 2001."

On May 7, 2002, the AAA sent a telecopy of the arbitration award, signed by the arbitrators on May 3, to Damrow and the Appellees' attorney; Martin Damrow was sent a copy by first class and certified mail. In the award, the arbitrators denied "the claim of . . . Damrow" and, on the Appellees' "counterclaim," awarded the Appellees as representatives of CFI the sum of $8,619,566.39 for the benefit of CFI. Subsequently, on July 8, the AAA mailed a letter by first class and certified mail to Damrow, the Appellees' attorney, and Martin Damrow with an enclosed copy of the award.

On May 28, 2002, the Appellees filed a motion in the district court under Neb. Rev. Stat. § 25-2612 (Reissue 1995), seeking to confirm the arbitration award. The Appellees sought confirmation of the May 3 arbitration award and an order directing entry of judgment against Damrow for the sum of $8,628,146.37.

On July 1, 2002, Damrow filed a responsive answer and resistance to the motion to confirm the arbitration award. Damrow admitted the execution of the shareholder repayment agreement attached to the Appellees' motion, but generally denied the substantive allegations of the motion to confirm. As an affirmative defense, Damrow alleged that the repayment agreement expired as of October 11, 2001, and was no longer in effect or valid at the time the arbitration award was entered. In objecting to the Appellees' motion, Damrow alleged certain defects in the arbitration proceedings, including lack of notice of the arbitration hearing and incorrect service of the arbitration award upon him. Damrow also alleged a statute of limitations defense to the arbitration proceedings. Damrow did not specifically ask the court to vacate the arbitration award, but he requested denial of the Appellees' motion.

The Appellees filed a motion for summary judgment, which was heard by the district court on November 7, 2002. The court

entered an order on January 2, 2003, denying the motion for summary judgment. After reciting the general history of the dispute between the parties, the court analyzed the issues raised by Damrow in response to the Appellees' motion to confirm the arbitration reward. The court stated in part:

> In his answer [Damrow] has raised an affirmative defense to the arbitration award, alleging that the shareholder repayment agreement under which the award was granted had expired as of October 11, 2001, and was no longer in effect or valid at the time of the entry of the arbitration award. The Court notes first, however, that it was [Damrow] himself who initiated the arbitration procedure and the procedure was initiated within the time frame set forth in the agreement. More importantly, the agreement does not actually set forth a time frame or limitation. Rather, the shareholder repayment agreement establishes a procedure to resolve disputes of shareholder obligations to [CFI]. The only time limiting clause contained in the agreement pertains to the period of time in which a party could utilize the statutes of limitations, or the defenses of estoppel and laches as affirmative defenses to obligations owed to [CFI]. As a matter of law the Court therefore must find that the shareholder repayment agreement and the utilization of arbitration were not time barred.

The district court went on to find that a factual dispute existed with respect to whether Damrow was notified in advance of the hearing rescheduled for March 8, 2002.

On January 2, 2003, the district court stayed its proceedings due to pending bankruptcy proceedings involving Damrow. The U.S. Bankruptcy Court discharged all but $3,550,471.19 of Damrow's obligation to CFI in an order dated August 17, 2004.

Damrow, although represented by counsel at earlier stages of the proceedings, appeared pro se at the March 2, 2005, trial on the Appellees' motion to confirm the arbitration award. The district court entered an order on March 7 denying Damrow's request that confirmation be withheld, confirming the arbitration award, and entering judgment against Damrow for $3,550,471.19. The district court's order contained a thorough discussion of the procedural history of the arbitration proceeding and a detailed

analysis of Damrow's various objections to the award. We include additional facts and district court findings in the analysis section below.

Damrow filed a pro se motion for new trial on March 14, 2005. At the time of the hearing before the district court on August 15, Damrow was represented by counsel. The court entered an order on September 1, 2005, denying Damrow's motion for new trial. Damrow subsequently perfected his appeal to this court.

### III. ASSIGNMENTS OF ERROR

Damrow asserts, consolidated and restated, that the district court erred in (1) confirming the arbitration award, (2) limiting the issues at trial, and (3) denying his motion for new trial.

### IV. STANDARD OF REVIEW

■ In reviewing a district court's decision to vacate, modify, or confirm an arbitration award under Nebraska's Uniform Arbitration Act, an appellate court is obligated to reach a conclusion independent of the trial court's ruling as to questions of law. *Hartman v. City of Grand Island*, 265 Neb. 433, 657 N.W.2d 641 (2003). However, the trial court's factual findings will not be set aside on appeal unless clearly erroneous. *Id.*

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Chase 3000, Inc. v. Nebraska Pub. Serv. Comm.*, 273 Neb. 133, 728 N.W.2d 560 (2007).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Roth v. Wiese*, 271 Neb. 750, 716 N.W.2d 419 (2006).

### V. ANALYSIS

■ We begin our analysis by recognizing that Nebraska case law provides that appellate review of an arbitrator's award is necessarily limited because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation. *Hartman v. City of Grand Island, supra.* Strong deference is due an arbitrative tribunal;

when parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process. *Id.*

### 1. FAILURE TO VACATE AWARD

Damrow asserts that the district court erred in confirming the arbitration award rather than vacating the award. Damrow argues that the award in this case was procured by undue means and that the hearing was conducted so as to substantially prejudice his rights.

Neb. Rev. Stat. § 25-2613(a) (Cum. Supp. 2006) provides, in relevant part, that the court shall vacate an award when

> (1) The award was procured by corruption, fraud, or other undue means;
>
> . . . .
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of section 25-2606, as to prejudice substantially the rights of a party.

There is no suggestion in this case that the award was procured by corruption or fraud, but Damrow argues that the award should be vacated because it was procured by other undue means. Other jurisdictions have interpreted "undue means" in the context of vacating an arbitration award as akin to corruption or fraud. See, *Spiska Engineering v. SPM Thermo-Shield*, 678 N.W.2d 804 (S.D. 2004); *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 735 N.E.2d 1066, 249 Ill. Dec. 241 (2000); *Nasca v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 346 (Colo. App. 2000); *Wojdak v. Greater Phila. Cablevision*, 550 Pa. 474, 707 A.2d 214 (1998); *Arkansas Dep't of Parks and Tourism v. Resort Managers, Inc.*, 294 Ark. 255, 743 S.W.2d 389 (1988); and *Firmin v. Garber*, 353 So. 2d 975 (La. 1977).

Damrow also argues that the award should be vacated because the hearing was conducted contrary to the provisions of Neb. Rev. Stat. § 25-2606 (Cum. Supp. 2006), so as to substantially prejudice his rights. Section 25-2606 provides:

> Unless otherwise provided by the agreement:
>
> (a) The arbitrators shall appoint a time and place for the hearing and cause notification to the parties to be served

personally or by registered or certified mail not less than ten days before the hearing. Appearance at the hearing waives such notice. The arbitrators may adjourn the hearing from time to time as necessary and, on request of a party and for good cause, or upon their own motion, may postpone the hearing to a time not later than the date fixed by the agreement for making the award unless the parties consent to a later date. The arbitrators may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear. The court on application may direct the arbitrators to proceed promptly with the hearing and determination of the controversy;

(b) The parties are entitled to be heard, to present evidence material to the controversy, and to cross-examine witnesses appearing at the hearing; and

. . . .

Arbitration proceedings shall take place in the county designated in section 25-403.01 unless the parties otherwise agree at a time subsequent to the arising of the controversy.

Damrow presents several specific arguments about the means used to procure the award and the manner in which the arbitration hearing was conducted, and we address each argument separately below.

### (a) Notice

Damrow argues that the arbitrators failed to give him the required statutory notice of the March 2002 arbitration hearing. As noted above, § 25-2606(a) provides that "[t]he arbitrators shall appoint a time and place for the hearing and cause notification to the parties to be served personally or by registered or certified mail not less than ten days before the hearing." The parties agree that the statutory notice was given for the February 2002 hearing, which hearing was postponed until March 8. The only written notice contained in our record for the March 8 hearing is dated March 6, 2002, and states that it was sent to Damrow via first class mail and United Parcel Service next day air. The March 6 letter stated that it was to "serve as a reminder" that the hearing was scheduled for March 8. Damrow

presented evidence before the district court suggesting that he was not aware of the March 8 hearing until March 11, when he called the AAA case manager to find out if the hearing had been rescheduled.

One of the attorneys who represented the Appellees during the arbitration proceedings testified about the rescheduling of the hearing from February to March 2002. The attorney testified that when bad weather conditions arose, she called the AAA on the date of the previously scheduled hearing. The attorney testified, "I called somebody down in Kansas City, and we had a conference call, and I indicated I didn't feel safe driving down that day. I believe on the telephone that day we rescheduled it." The attorney was asked if Damrow was "contacted previously" about the rescheduling, and she testified, "I'm sure that he was. He may have been on that phone call with us. I don't recall." Damrow then made a hearsay objection, stating, "There [were] no telephone calls, and it's hearsay evidence." The court overruled Damrow's objection. The attorney also testified that prior to the Appellees' motion to confirm the arbitration award, she never received any communications from Damrow in which he stated he did not have notice of the arbitration hearing. The attorney testified further that prior to the actual hearing, she never heard from Damrow that he intended to be personally present at the hearing. Based on letters received from Damrow's counsel at the time, the attorney was under the impression that Damrow did not intend to participate further in the proceedings.

On cross-examination, Damrow questioned the attorney about her recollection of his involvement in any telephone calls with the AAA. When Damrow stated to her, "You . . . said that I was involved in a phone conversation with [the AAA]," the attorney responded, "No. I said you may have [been involved in the conference call on the original date of the hearing]. I didn't recall." Damrow asked the attorney if there were any notices other than the March 6, 2002, letter stating that there was a hearing on March 8. The attorney responded, "Well, that's why I think that you were on that phone call with us because I think that you did know about it." Damrow asked the attorney if she had proof that he was notified by telephone, and the

attorney stated, "My memory tells me that you were on that call with us. We never excluded you even though you asked to be excluded."

In addressing the notice issue, the district court noted that § 25-2613(a)(4) provides that one ground for vacating an arbitration award is evidence that the arbitrators conducted a hearing in violation of § 25-2606 to the prejudice of the claimant. The court determined that the evidence showed that the statutory requirements were followed with regard to the notice for the original February 2002 hearing. The court then stated:

> The statute does not require, however, that the same notice be given to the parties should the original hearing be adjourned or postponed. It appears adequate that the arbitrators provided the parties with actual notice of the new date and time of hearing which the evidence suggest[s] was done in these proceedings.

The court referred to the testimony by the Appellees' attorney that the parties had a discussion with the arbitrators at the time the February 2002 hearing was continued and that she believed Damrow participated in the conversation. The court stated:

> [Damrow] actually offered no evidence even through his own testimony which specifically denied his participation in that telephone conference. The evidence also reflects that he received a reminder notice, which is suggestive of an earlier notice. The evidence further reflects that he failed to raise objection or concerns about notice of the hearing until after he received the arbitrator's award.

The court stated that the evidence "strongly suggests that [Damrow] was in fact aware of the change in dates and would have received a reminder of the new hearing date and time." The court also observed that Damrow admitted knowing about the hearing by March 11, but that he took no action to request further opportunity to offer evidence or to resolve the issue of notification at that time. The court found Damrow's failure to appear at the arbitration hearing "more attuned to his prior statements to the arbitrators concerning his inability to financially afford to attend and participate." The court concluded that Damrow elected not to participate in the arbitration proceedings

and further found that Damrow's claims of irregularity were not sufficient to justify the vacation of the arbitration award.

It is clear that the March 6, 2002, notice letter with regard to the March 8 hearing did not comply with the notice requirements of § 25-2606(a). The district court suggested and the Appellees argue that the actual notice of the postponed hearing was sufficient. Other jurisdictions have found that lack of formal notice will not invalidate an arbitration award if the parties have actual knowledge of the hearing in advance. In *Lombardo v. Inv. Management and Research*, 885 S.W.2d 320 (Ky. App. 1994), the court held that although parties to an arbitration are generally entitled to reasonable notice of the time and place of arbitration hearings, lack of formal notice does not invalidate an award if the parties to the arbitration have actual knowledge of the hearing in advance. The court further found the essential requirement to be that the parties be afforded a reasonable opportunity to be heard. *Id.* See, also, *Murray v. Ferdie*, 431 So. 2d 724 (Fla. App. 1983) (finding arbitration award was not null and void because of alleged lack of proper notice concerning hearing). We conclude that under the facts of this case, the lack of formal notice in compliance with § 25-2606(a) of the postponement of the hearing previously scheduled and correctly noticed does not invalidate the award if the parties to the arbitration had actual knowledge of the postponed hearing in advance.

The question then becomes whether Damrow had actual notice of the March 2002 postponed hearing before the hearing date. The evidence on the issue of actual notice is conflicting. The district court resolved this point in favor of the Appellees, implicitly finding the Appellees' evidence to be more credible. The credibility of witness testimony and weight to be given the testimony are questions for the trier of fact. *Huffman v. Peterson*, 272 Neb. 62, 718 N.W.2d 522 (2006). An appellate court will consider the fact that the trial court saw and heard the witnesses and observed their demeanor while testifying, and will give great weight to the trial court's judgment as to credibility. *Id.* We decline to reevaluate the evidence on the issue of actual notice and defer to the judgment of the trial court on this issue.

We also note the district court's conclusion that Damrow's failure to appear at the arbitration hearing was "more attuned to his prior statements to the arbitrators concerning his inability to financially afford to attend and participate." Damrow did express to the AAA on several occasions his intent not to participate further in the arbitration process. Section 25-2606(a) does allow the arbitrators to "hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear." We also note that despite Damrow's assertions that he became aware of the March 8, 2002, hearing on March 11, he did nothing subsequently to raise the notice issue before the arbitrators or to seek a further opportunity to produce evidence before the panel. Damrow has failed to show that his rights were substantially prejudiced with respect to the arbitration hearing. See § 25-2613(a)(4). Under the circumstances of this case, we conclude that the district court did not err in finding the lack of formal notice an insufficient ground to vacate the arbitration award.

(b) Venue

Damrow asserts that the district court should have vacated the award because the arbitrators failed to conduct the proceedings in the appropriate venue. Section 25-2606 provides in relevant part that "[a]rbitration proceedings shall take place in the county designated in section 25-403.01 unless the parties otherwise agree at a time subsequent to the arising of the controversy." Neb. Rev. Stat. § 25-403.01 (Reissue 1995) contains the general provisions with respect to venue in civil cases brought in Nebraska courts. Damrow lived in Kearney at the time of the arbitration proceedings and, in his demand for arbitration, requested that the hearing be held in Kearney. One of the attorneys who represented the Appellees during the arbitration proceedings testified at trial that the hearing was scheduled at one time to occur in Kearney, but that at some point, the parties opted to move it to Kansas City, where the arbitrators lived and where the AAA office was located. The attorney testified further that the change was made for the convenience of the arbitrators. Damrow testified that he did not know why the hearing was moved to Kansas City.

Clearly, § 25-2606 does not prohibit holding an arbitration hearing in a location outside of Nebraska, and there is evidence in the record to support a conclusion that the parties agreed to the new location as required by statute. More importantly for our analysis, we note that Damrow did not raise any issues relating to venue in his pleadings before the district court; nor did the district court address venue in any of its orders found in the record. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006). We also observe that the February 2002 arbitration hearing, which was subsequently rescheduled for March, had been set to occur in Kansas City. There is nothing in the record to suggest that Damrow objected to the location of the hearing as originally scheduled in February 2002. Damrow's arguments concerning venue are without merit.

(c) Timeliness of Award

Damrow asserts that the arbitration panel failed to issue its award in the timeframe and manner required by statute. The district court found that the objections raised to the delay in the notice of the award to Damrow were without merit for the reason that Damrow had not been deprived of an opportunity " 'to contest the award or to seek corrections and changes to the award in the manner provided by Nebraska statute.' "

Neb. Rev. Stat. § 25-2609 (Reissue 1995) provides:

(a) The award shall be in writing and signed by the arbitrators joining in the award. The arbitrators shall deliver a copy to each party personally or by registered or certified mail or as provided in the agreement.

(b) An award shall be made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court orders on application of a party but not more than thirty days after the hearing. The parties may extend the time in writing either before or after the expiration thereof. A party waives the objection that an award was not made within the time required unless he or she notifies the arbitrators of his or her objection prior to the delivery of the award to him or her.

The arbitration hearing was conducted on March 8, 2002. On May 7, the AAA sent a copy of the arbitration award by first class and certified mail to Martin Damrow and a telecopy to the rest of the parties, but it did not send a copy by first class and certified mail to all of the parties until July 8. Although Damrow states in his brief on appeal that he objected to the delay in the arbitrators' issuance of the award, he does not specify when or to whom he objected. There is, in fact, nothing in the record to support a conclusion that Damrow notified the arbitrators of his objection prior to the delivery of the award to him. Accordingly, Damrow's objection has been waived. See § 25-2609.

(d) Evidence Received at Arbitration Hearing

Damrow argues that receipt by the arbitrators of the testimony taken at the offices of the Appellees' attorneys on June 4, 2001, without his participation in the proceeding led to an arbitration award procured by undue means. The nature of the June 2001 hearing or proceeding is a bit puzzling—none of the exhibits referenced in the transcription of that proceeding, including a copy of any notice from the AAA, are found in our record—but testimony at trial was given to explain the occurrence of the June 2001 hearing. One of the attorneys who represented the Appellees in the arbitration proceedings testified about the June 2001 hearing. The attorney testified:

> There was an order[,] I think it was issued February 6, 2001, scheduling the hearing for June 4 through the 8th at my law firm. And I'm just reading this to refresh my memory. Yes, the matter was set for hearing during that time. It was our understanding that it was going to be conducted at our law firm, and we had not heard differently from the [AAA]. They didn't show up. The arbitration panel was not there. Our witnesses were there, and we went ahead and made our record that day as you suggested before. This transcript was offered into evidence at the actual hearing in Kansas City.

Damrow questioned the attorney about her knowledge of any notice given to him of the June 2001 hearing. The attorney testified that she was certain Damrow had been informed of

the hearing because her firm "continued to serve [Damrow] as to the [AAA] even though [he] asked to be excluded." Damrow questioned the attorney about whether any documentary evidence existed that he had been notified, and the attorney responded:

> I would say that the answer I can give you is that in my practice — and it was always true when I was at [the firm representing the Appellees] and it's true now, in any sort of a legal proceeding, that I make sure that I copy all sides including the Court in pleadings. And so I'm certain that I did on this occasion or this wouldn't have given rise to an exception.

The attorney did agree, however, that she had no documentary proof that Damrow had been notified of the June 2001 hearing.

Section 25-2606(b) provides that "[t]he parties are entitled to be heard, to present evidence material to the controversy, and to cross-examine witnesses appearing at the hearing." However, § 25-2606(a) provides, as noted previously, that "[t]he arbitrators may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear." There is nothing in Nebraska's Uniform Arbitration Act that prevents the arbitrators from receiving evidence such as the transcript of the June 2001 hearing, and we see no evidence that the hearing was conducted contrary to the provisions of § 25-2606. Nor do we find the receipt of this evidence to show that the award was procured by undue means. There is nothing in the record to suggest that the June 2001 proceeding was hidden from Damrow in any way. As determined above, the record suggests that Damrow had actual notice of the March 2002 hearing at which this evidence was received, declined to attend, and did nothing to seek a further opportunity from the arbitration panel to present evidence in support of his position. Damrow's arguments concerning the evidence received at the arbitration hearing are without merit.

### (e) Statute of Limitations

Damrow argues that the shareholder repayment agreement should be construed to find that he had a right to assert a statute of limitations defense in the arbitration proceedings, that the

lack of notice of the arbitration hearing and the district court's limitation of issues at trial denied him the right to assert this defense, and that the award should accordingly be vacated. Damrow argues that any shareholder could assert defenses based upon the statute of limitations, estoppel, and laches after October 11, 2001.

The repayment agreement, dated October 11, 1999, provided in part:

> The Shareholders hereby promise and agree to not plead the statute of limitations as a defense to repayment to [CFI] of any amount determined due hereunder and hereby waive the statute of limitations, estoppel and laches, as to any and all claims for repayment to [CFI] determined due hereunder for a period of two years from the date of this Agreement.

The district court's findings in the summary judgment order seem to relate more to whether the arbitration proceedings themselves were barred by this provision than to an argument that Damrow was free after the 2-year period to assert a statute of limitations defense to any claims that he owed money to CFI. Nevertheless, to the extent that Damrow's argument is based upon his claim that the arbitrators' failure to notify him of the arbitration hearing deprived him of his right to present his statute of limitations defense to the arbitrators, we have previously determined that the evidence supports the conclusion that Damrow had actual notice of the arbitration hearing and chose not to participate. Thus, any alleged deprivation of Damrow's right to assert a statute of limitations defense at the arbitration level resulted from Damrow's own actions or inactions. We conclude that Damrow's argument that he was denied a right to assert a statute of limitations defense at the arbitration hearing is without merit.

Further, while Damrow asserted, in his answer and resistance to the motion to confirm the arbitration award in the district court, that the award contained sums barred by the statute of limitations, he did not plead a specific statute of limitations; nor does he argue in his brief on appeal which statute of limitations he believes is applicable. The shareholder repayment agreement, dated October 11, 1999, contains provisions for determining

the individual shareholders' liability to CFI. Pursuant to this agreement, Damrow initiated a demand for arbitration on July 21, 2000, and an arbitration award was entered on May 3, 2002, establishing Damrow's individual liability. This award was ultimately confirmed by the district court, as amended by the bankruptcy judgment, on March 7, 2005. Because Damrow has not pled or argued how any statute of limitations barred the action to determine his individual shareholder liability, nor is it apparent from the pleadings or evidence, we find that Damrow has failed to show any error with respect to the district court's ruling on the statute of limitations defense.

(f) Conclusion

We conclude that the district court did not err in failing to vacate the arbitration award.

2. LIMITATION OF ISSUES AT TRIAL

Damrow argues that the district court erred in limiting the issues at trial to the issue of Damrow's alleged lack of notice of the arbitration hearing. Damrow takes issue with the statement in the court's order of March 7, 2005, that in ruling on the Appellees' motion for summary judgment, the court had "found in favor of the [Appellees] on all issues except the issue concerning whether or not . . . Damrow received notice of the arbitration hearing and whether there are grounds to vacate the award." Damrow essentially argues that the court's determination in the summary judgment order that there was an issue of fact as to whether Damrow received notice of the arbitration hearing did not equate with a determination that no other issues could be considered at trial, especially where the court did not state that it was entering a partial summary judgment on any other issues in favor of the Appellees. Damrow does admit, however, that the court made certain findings in the summary judgment order with regard to the statute of limitations issue.

We note that at the start of trial, the court stated:

The Court has previously ruled on some of the matters involved in this including pursuant to a motion for summary judgment, and it would be my understanding that basically the remaining issue — the sole factual issue that

> precluded the Court from granting the summary judgment for confirmation of the arbitration award was the allegations of lack of notice. And so I will direct that [Damrow] go ahead and proceed with that issue.

Damrow did not object to the court's framing the issues to be determined at trial in this manner and proceeded to present evidence and examine witnesses as directed by the court. A party cannot complain of error which that party has invited the court to commit. *In re Estate of Jeffrey B.*, 268 Neb. 761, 688 N.W.2d 135 (2004). One cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong. *Mooney v. Gordon Memorial Hosp. Dist.*, 268 Neb. 273, 682 N.W.2d 253 (2004). However, we do not see that the court failed to consider any of the issues raised by Damrow in his answer and resistance to the Appellees' motion to confirm the arbitration award. In his pleading, Damrow raised issues with respect to expiration of the shareholder repayment agreement and statute of limitations, which issues were addressed by the trial court in ruling on the motion for summary judgment. Damrow also raised issues with regard to the alleged lack of notice of the arbitration hearing and issuance of the arbitration award. These issues were addressed by the district court in its order of March 7, 2005. Accordingly, we conclude that all issues raised by Damrow before the district court were addressed by the district court. Damrow's arguments on this point are without merit.

### 3. MOTION FOR NEW TRIAL

Damrow asserts that the district court erred in denying his motion for new trial. Because of our resolution of Damrow's other arguments, we need not address this assignment of error further. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Rozsnyai v. Svacek*, 272 Neb. 567, 723 N.W.2d 329 (2006).

## VI. CONCLUSION

The district court did not err in confirming the arbitration award or abuse its discretion in denying Damrow's motion for new trial.

AFFIRMED.