16 Neb. App. 275
JAMES E. DINGES, APPELLEE,
v.
CINDY E. DINGES, APPELLANT.
No. A-06-239.
Court of Appeals of Nebraska.
Filed January 2, 2008.
Cindy E. Dinges, pro se.
Dennis R. Ringgenberg and Daniel L. Hartnett, of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett & Storm, P.C., for appellee.
INBODY, Chief Judge, and CARLSON and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Cindy E. Dinges appeals from the decree dissolving her marriage to James E. Dinges. We find no merit in Cindy's assignments that the trial court erred in denying her due process, in making findings not supported by the evidence, and in not recusing itself. However, we conclude that the trial court erred in treating traceable proceeds of Cindy's lump-sum Social Security disability award as a marital asset, contrary to the anti-assignment clause of the Social Security Act. We therefore modify the trial court's division of property.

BACKGROUND
Cindy and James married on October 23, 1998. No children were born to the marriage. On July 20, 2004, James filed a petition for dissolution. On July 27, Cindy moved from the marital home.
At the time of the marriage, Cindy worked as a union pipefitter. She finished working for her employer on April 30, 2000, and took an honorable withdrawal from the union on August 1. James testified that Cindy worked full time until toward the end of 2000, when she had an appendicitis attack, underwent some surgeries, and was laid off. Cindy applied for Social Security disability benefits. A "Notice of Decision  Fully Favorable" dated August 16, 2004, informed Cindy that the Social Security Administration had decided her case. A notice of award stated that Cindy's first payment was for $27,170 for the money she was due through September 2004 and that she would then receive $632 per month. The notice of award stated that the administration found Cindy became disabled on December 3, 2000, that she had to be disabled for 5 full calendar months in a row before she was entitled to benefits, and that Cindy's first month of entitlement to benefits was June 2001.
In February 2005, Cindy purchased a modular home with a cash value of $54,000. She made a downpayment of $27,000, using the "Social Security back pay."
The trial court determined that Cindy's lump-sum Social Security disability award represented benefits which were accrued during the marriage and that the award should be considered in equitably dividing the marital estate. Because Cindy used the proceeds from the award to purchase the modular home, the court stated that the modular home was part of the marital estate. The court proceeded to equitably distribute the marital assets and debts.
Cindy timely appeals.

ASSIGNMENTS OF ERROR
Cindy alleges, restated, that the court erred in (1) denying her due process by forcing her to go to trial without a final pretrial conference, (2) making factual findings unsupported by the evidence, (3) finding no basis for recusal, and (4) classifying her lump-sum Social Security disability award as marital property and awarding one-half of its value to James.

STANDARD OF REVIEW
[1] Determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law, regarding which an appellate court is obligated to reach its own conclusions independent of those reached by the trial court. Conn v. Conn, 13 Neb. App. 472, 695 N.W.2d 674 (2005).
[2] A motion to recuse for bias or impartiality is initially entrusted to the discretion of the trial court, and the trial court's ruling will be affirmed absent an abuse of that discretion. Gibilisco v. Gibilisco, 263 Neb. 27, 637 N.W.2d 898 (2002).
[3] The division of property is entrusted to the discretion of the trial judge and will be reviewed de novo on the record and affirmed in the absence of an abuse of discretion. Liming v. Liming, 272 Neb. 534, 723 N.W.2d 89 (2006).

ANALYSIS

Due Process.
[4] Cindy argues that she was denied due process by the trial court's denying her a pretrial conference, in violation of Fed. R. Civ. P. 26(f). Generally, Nebraska state courts are not bound by the federal rules governing civil procedure in federal courts. See Fed. R. Civ. P. 1 (federal rules govern procedure in U.S. district courts). Nebraska has not adopted a rule similar to the federal rule 26(f), and Neb. Ct. R. of Dist. Ct. Pretrial Proc. (rev. 2000) states only that "the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider" certain issues. Further, the court held a pretrial conference on November 5, 2004, which Cindy's then counsel attended. The court's decision not to hold another pretrial conference or a settlement conference after Cindy began handling her own representation does not amount to a denial of due process or an abuse of the trial court's discretion. This assignment of error is without merit.

Factual Findings.
Another of Cindy's assignments of error broadly questions whether the trial court erred in making its findings contained in the decree "[w]hen [i]ts [f]indings [w]ere [n]to [b]ased [o]n [e]vidence [a]dduced [a]t [t]rial." Brief for appellant at 2.
[5] She argues that the court erred in dividing the marital assets and debts and contends that the court based its findings on exhibits that were "allowed into evidence against [her] timely objections and against the Nebraska Rules of Evidence." Id. at 22. To the extent Cindy argues the court erred in receiving evidence over her objections or in dividing the marital estate, such arguments are not encompassed by her assignment of error and we do not consider them. See Bellino v. McGrath North, 274 Neb. 130, 738 N.W.2d 434 (2007) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party assigning error).
[6] Cindy argues that the values used by the trial court were based on an exhibit offered by James showing values of property, which exhibit was not received into evidence "[Nut curiously ... was made part of the bill of exceptions after trial." Brief for appellant at 23 (emphasis omitted). Of course, Neb. Ct. R. of Prac. 5A(1) (rev. 2006) requires the official court reporter to include in the verbatim record of any "trial or other evidentiary hearing" the "evidence offered" at such trial or hearing. Thus, there is nothing "curious" about the presence of the exhibit within the bill of exceptions. The rule requires that an exhibit offered at trial but not received by the trial court be included in the record in order to allow an appellate courtwhere an alleged error in refusing to receive the exhibit is properly raised in an appealto effectively review the court's decision. See Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1995). The pertinent question, however, is whether, in deciding the issues, the trial court expressly relied on the exhibit which the court had refused to receive. We have reviewed the court's decree, including extensive findings of fact and conclusions of law, and find no indication that the values used by the court were derived from the refused exhibit. We conclude that the values used by the trial court are supported by other evidence which was received at trial.

Recusal.
On November 7, 2005, Cindy filed a "Motion to Recuse or, in the Alternative[,] Motion for Disqualification." She alleged that she had "sufficient reason to believe" that the trial judge was biased against Cindy because of the judge's actions in a telephonic hearing on October 28 where the judge "ridiculed" Cindy and "belittled her actions[,] all the while praising [James'] [a]ttorney for his alleged `correctness.'" Cindy further alleged that the judge showed "an obvious bias" toward James and his position during the telephonic hearing. Cindy stated that she filed a complaint against the judge with the "Nebraska Judicial review Committee." On November 18, the court entered an order stating that it "finds that there is no basis in fact for this judge to recuse or disqualify himself from hearing the within matter."
[7] A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. Gibilisco v. Gibilisco, 263 Neb. 27, 637 N.W.2d 898 (2002). We have reviewed the transcription of the October 28, 2005, hearing, and find nothing in the court's statements showing bias. While a more complete explanation of the court's rulings might have been helpful to this litigant, we find no abuse of discretion in the denial of the motion. This assignment of error lacks merit.

Social Security Disability Award.
Cindy argues that the court erred in classifying her lumpsum Social Security award as marital property. The trial court, using an "analytical approach," determined that Cindy's Social Security award represented benefits accrued during the marriage and should be included in the marital estate. The court then stated that because Cindy used the proceeds from the Social Security disability award to purchase the modular home, the modular home was part of the marital estate.
[8] In Parde v. Parde, 258 Neb. 101, 602 N.W.2d 657 (1999), the Nebraska Supreme Court adopted the analytical approach in determining whether proceeds from a Federal Employers' Liability Act personal injury settlement should be included in the marital estate. The Parde court explained that "[i]n the analytical approach, courts analyze the nature and underlying reasons for the compensation." 258 Neb. at 108-09, 602 N.W.2d at 662. The Parde court held that compensation for an injury that a spouse has or will receive for pain, suffering, disfigurement, disability, or loss of postdivorce earning capacity should not equitably be included in the marital estate, but compensation for past wages, medical expenses, and other items that compensate for the diminution of the marital estate should equitably be included in the marital estate because they properly replace losses of property created by the marital partnership. We have little difficulty agreeing with the trial court that under the analytical approach, Cindy's lump-sum award would be included in the marital estate because it was compensation for the diminution of the marital estate. The problem presented by this case, which problem the trial court did not address, is that Cindy's lump-sum award was composed of Social Security benefits.
[9] The anti-assignment section of the Social Security Act, 42 U.S.C. § 407(a) (2000), states:
The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
In Philpott v. Essex County Welfare Board, 409 U.S. 413, 417, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973), the U.S. Supreme Court described § 407(a) as "impos[ing] a broad bar against the use of any legal process to reach all social security benefits." However, in 1975, Congress declared that Social Security benefits were subject to legal process "to enforce the legal obligation of the individual to provide child support or alimony." 42 U.S.C. § 659(a) (2000). "Alimony" does not include "any payment or transfer of property or its value by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." § 659(i)(3)(B)(ii).
In Webster v. Webster, 271 Neb. 788, 716 N.W.2d 47 (2006), the Nebraska Supreme Court considered whether the husband, who participated in a public employee retirement fund in lieu of Social Security participation, was entitled to an offset or other compensation for the wife's Social Security benefits when dividing marital property in a dissolution decree. The Webster court stated, "Courts generally agree that § 407(a) preempts state law that would authorize distribution of Social Security benefits, and that Social Security benefits themselves are not subject to direct division in a dissolution proceeding." 271 Neb. at 796, 716 N.W.2d at 54. The Webster court cited to a number of cases where state courts considered the U.S. Supreme Court's decision in Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979), as instructing them that Social Security is not subject to an indirect adjustment through offset.
In Hisquierdo, the U.S. Supreme Court held that in dissolution proceedings, a wife did not have a community property interest in her husband's expectation of receiving railroad retirement benefits. The Court, in so holding, expressly pointed to the similarities between the railroad retirement benefits and benefits under the Social Security Act, including the fact that the laws providing for both forms of benefits specifically prohibited the assignment of the benefits through garnishment, attachment, or other legal process....
The Court concluded that Congress had decided upon a delicate statutory balance in which it fixed an amount it thought appropriate to support an employee's old age and to encourage the employee to retire. In deciding how finite funds were to be allocated, Congress chose not to allow diminution of that fixed amount by the spouse for whom the fund was not designed. The Social Security Act provides a specific limited avenue for divorced persons to obtain a share of the former spouse's benefits. See 42 U.S.C. § 402(b)(1)(A) through (D), and (c)(1)(A) through (D) (2000).
The Court in Hisquierdo specifically rejected the wife's argument that even if a direct allocation of her former husband's railroad retirement benefit would be contrary to the statutory benefit scheme, she should still be entitled to an offsetting award of presently available community property to compensate her for her interest in the expected benefits. The court explained: "An offsetting award, however, would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check." Hisquierdo v. Hisquierdo, 439 U.S. 572, 588, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979).
Webster v. Webster, 271 Neb. at 797-98, 716 N.W.2d at 54-55.
[10] The Webster court stated that the weight of authority concluded an offset of Social Security benefits was prohibited, but that most of those courts, especially those in equitable division states as compared to community property states, "have not found a more generalized consideration of Social Security benefits to be an impermissible factor in the overall scheme when making a property division." 271 Neb. at 798, 716 N.W.2d at 55. The Webster court ultimately concluded that "the anti-assignment clause of the Social Security Act and the Supremacy Clause of the U.S. Constitution prohibit a direct offset to adjust for disproportionate Social Security benefits in the property division of a dissolution decree." Webster v. Webster, 271 Neb. 788, 800, 716 N.W.2d 47, 56 (2006).
The Webster court's discussion of Marriage of Zahm, 138 Wash. 2d 213, 978 P.2d 498 (1999), and Neville v. Neville, 99 Ohio St. 3d 275, 791 N.E.2d 434 (2003), provides some guidance on how to dispose of the issue before us.
The court in Marriage of Zahm ... concluded that where the trial court neither computed a formal calculation of the value of the husband's Social Security benefits nor offset a formal numerical valuation into the court's property division via a specific counterbalancing property award to the wife, the reasoning in Hisquierdo did not apply. The court explained that the antireassignment clause of the Social Security Act did not preclude the trial court from considering a spouse's Social Security income "within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property." 138 Wash. 2d at 222, 978 P.2d at 502. As described by the court in Neville, [a]lthough a party's Social Security benefits cannot be divided as a marital asset, those benefits may be considered by the trial court under the catchall category as a relevant and equitable factor in making an equitable distribution." Neville v. Neville, 99 Ohio St. 3d at 278, 791 N.E.2d at 437. This is especially true when "'a spouse's social security contributions and ultimate benefits have been increased by the work of the other spouse, and ... a nonemployed spouse loses spending power after a divorce through the inability to use the other spouse's social security benefits.' [Quoting] 2A Social Security Law and Practice (Flaherty & Sigillo, Eds., 1994), Section 34:67." 99 Ohio St. 3d at 278, 791 N.E.2d at 437.
Webster v. Webster, 271 Neb. at 799, 716 N.W.2d at 55-56.
In In re Marriage of Knipp, 15 Kan. App. 2d 494, 809 P.2d 562 (1991), a Kansas appellate court reached a similar conclusion. In that case, the husband received a lump-sum Social Security disability benefit of approximately $12,800 during the marriage for a disability suffered prior to the marriage, and he invested the payment in an interest-bearing account. At the time of the divorce, $9,200 remained in the account, and the trial court ordered $3,000 from the account set over to the wife as part of the property division. Citing to Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973), the Kansas Court of Appeals stated that the U.S. Supreme Court had determined that 42 U.S.C. § 407(a) applied to benefits received and deposited in a savings account, stating, "Writing for a unanimous court, Justice Douglas reasoned that retroactive benefits placed in an account retained the quality of `moneys' within the scope of 42 U.S.C. § 407." In re Marriage of Knipp, 15 Kan. App. 2d at 495, 809 P.2d at 563. The Kansas court concluded that the trial court erred in setting aside a portion of the husband's lump-sum Social Security benefits but stated that "the anti-assignment statute does not prohibit a court from considering the value of a lump sum social security disability award in dividing the remaining marital property." Id. at 495-96, 809 P.2d at 564. The Kansas court then reversed, and remanded for reconsideration of the property division, stating that "no single asset may be viewed independently in adjudicating a property settlement." Id. at 496, 809 P.2d at 564.
In Olsen v. Olsen, 169 P.3d 765, 768 (Utah App. 2007), the Court of Appeals of Utah held that
Congress has preempted state trial courts from including social security benefits as a marital asset; however, trial courts may consider social security benefits in relation to all joint and separate marital assets in seeking to ensure that "property be fairly divided between the parties, given their contributions during the marriage and their circumstances at the time of the divorce."
The Olsen court concluded that the division of property needed to be reconsidered on remand.
[11] We conclude that the trial court erred in stating that it "should consider the lump sum award received by C[indy] as a marital asset subject to division in this dissolution proceeding" and then including the modular home, purchased post separation with the Social Security funds, in the marital estate. The Nebraska Supreme Court's holding in Webster v. Webster, 271 Neb. 788, 716 N.W.2d 47 (2006), precludes such treatment. However, we must also decide the issue discussed but not reached by the Webster court. We hold that while an offset of a Social Security award is prohibited by the anti-assignment clause of the Social Security Act and the Supremacy Clause of the U.S. Constitution, a court may properly consider a spouse's Social Security award in equitably dividing the marital property. We rely upon the "weight of authority" noted by the Webster court. See id. at 798, 716 N.W.2d at 55. Of course, such award is only one of many factors which we consider in our de novo review of the division of marital property.
[12,13] Appeals in domestic relations matters are heard de novo on the record, and thus, an appellate court is empowered to enter the order which should have been made as reflected by the record. Foster v. Foster, 266 Neb. 32, 662 N.W.2d 191 (2003). We therefore modify the decree to exclude the Social Security award, traceable to the modular home, as part of the marital estate. The trial court's decree showed the net marital estate to be $41,933, and it awarded Cindy a net value of $21,060.52 of the marital estate and James a net value of $20,872.48. Eliminating from the marital estate the $27,000 traceable to the modular home leaves a net marital estate of $14,933. Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. Millatmal v. Millatmal, 272 Neb. 452, 723 N.W.2d 79 (2006). A division of one-third to one-half of this marital estate would be to award a spouse between approximately $4,978 and $7,467. We accept the trial court's distribution of the assets and liabilities, but, to equitably divide the marital estate, we order James to pay $11,000 to be distributed to Cindy. With such payment, Cindy will have received $5,060.52 of the marital estate, and James' share will be reduced to $9,872.48.

CONCLUSION
We conclude that the court did not abuse its discretion in denying Cindy a further pretrial conference or a settlement conference, in the factual findings it made in the decree, or in declining to recuse itself. However, we conclude that the court erred in finding Cindy's lump-sum Social Security disability award to be a marital asset subject to division. We therefore modify the court's decree to equitably divide the marital estate after eliminating from the marital estate the $27,000 in Social Security disability benefits traceable to the modular home.
AFFIRMED AS MODIFIED.