IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GIANDINOTO V. GIANDINOTO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TAWNI R. GIANDINOTO, APPELLEE,

V.

STEVEN J. GIANDINOTO.

Filed April 4, 2017.    No. A-16-802.

Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Phillip G. Wright for appellant.

Julie Fowler and Brendan M. Kelly, of Fowler & Kelly Law, L.L.P., for appellee.

INBODY, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Steven J. Giandinoto appeals the order of modification entered by the district court for Sarpy County on July 20, 2016, and the order denying Steven's motion for new trial.

## BACKGROUND

The parties' marriage was dissolved in January 2014 and sole legal and physical custody of the parties' three minor children was granted to Tawni R. Giandinoto, subject to Steven's reasonable parenting time. Steven appealed the dissolution decree and this court entered a memorandum opinion, affirming the decisions of the district court on November 20, 2014.

The mandate was filed on February 26, 2015, and Steven filed a complaint to modify on February 27. Steven sought sole legal and physical custody, alleging a material change in

- 1 -

circumstances had occurred warranting modification of the decree and a change in custody of the minor children.

Tawni filed an answer, denying Steven's allegations that a material change in circumstances had occurred. She filed an amended answer and counterclaim on August 13, 2015. In her counterclaim, she requested that Steven's parenting time be supervised because, she alleged, he used inappropriate psychological and verbal abuse to intimidate and coerce the children, and he made disparaging remarks about her in front of the children. She requested to retain sole legal and physical custody, subject to Steven's parenting time, and other relief including attorney fees and continued child support.

Trial was held in the district court for Sarpy County on June 1, June 2, and June 21, 2016.

Steven testified that he filed the complaint to modify because he was concerned about his children's academic performance and attendance, the lack of stability in Tawni's personal life and work schedule, and because Tawni interfered with his telephone contact with the children. He testified that he was concerned that the children were not receiving adequate dental care, and were overweight, presumably from a lack of physical activity. He is a dental hygienist and testified that he has only exercised weeknight visitation once since the original decree because of his work schedule and the time it would take to drive to Auburn and back from Omaha.

Tawni testified in response to Steven's allegations. She provided information regarding her work schedule as a nurse, her personal life, and how she addresses the children's social, educational and physical and mental health needs. She said that although she had previously told Steven he could contact the children "anytime," she expected that he would use his discretion to contact them "within normal hours." She testified that some of his communication with the children was late at night on school nights and she was concerned that it affected their academic performance.

Jacqueline Kelsay, testified that she is the principal at Calvert Elementary School in Auburn, the school attended by the two younger children. She stated that she was familiar with Tawni, but had no contact with Steven. She said that any parent can access information about their child's education through the school, either by requesting a mailing or accessing the website which includes the child's grades, attendance, and lunch account information, as well as the calendar of parent-teacher meetings and school activities. Kelsay testified after a certain number of days absent per semester the parent receives a letter from the school. Kelsay said Tawni received this letter on behalf of Kylan and Joren during the first semester, but that the boys had what was considered "average attendance," and their grades improved as the school year progressed. She attributed their academic performance to an increasingly strong work ethic, and said both boys' teachers were well satisfied.

The parties' oldest child, Brekkan testified in camera, with only the judge and the guardian ad litem present. Brekkan's testimony, as well as the court's specific findings regarding his testimony were sealed. The parties agreed that his testimony would be sealed, and neither party objected when they were informed that they would not have access to his testimony, or the court's specific findings with regard to his testimony.

The trial court's order specifically addressed the evidence presented at trial with regard to (1) the children's educational progress, (2) housing, (3) the children's mental health and

well-being, (4) visitation, (5) Tawni's personal behavior, (6) the children's dental and medical care, (7) Tawni's work schedule, and other miscellaneous factors. The Court found that, generally, Brekkan's testimony supported the court's findings.

The trial court found that based on the totality of the evidence presented, it was clear that the children were placed "squarely in the middle of their parents' conflict and are suffering from the effects thereof." The court determined that some changes had occurred since the entry of the decree, but ultimately found that no material change in circumstances had been proven, demonstrating that Tawni was unfit for continuing custody or that the best interests of the minor children would be best served by granting custody to Steven.

The court ordered the parenting plan attached to the January 22, 2014, decree would remain in full force and effect, except for modifications to the ordered telephonic and weekday visitation. The modifications included amending the provision for telephonic visitation to allow 10 to 30 minute calls between the hours of 6 p.m. and 9 p.m. four times per week, and changing the weekday parenting time from Wednesday to Thursday evening to accommodate Steven's work schedule. The court denied Tawni's request for supervised visitation and ordered that the child support calculation set forth in the original decree should remain in effect. The court ordered Steven to pay $10,000 toward Tawni's attorney's fees.

Steven filed a motion for new trial on August 1, 2016. After a hearing on August 15, the motion was overruled. Steven timely appealed. Tawni filed a notice with this court, affirmatively waiving her right to file a brief.

## ASSIGNMENTS OF ERROR

Steven asserts the district court erred and abused its discretion in: (1) awarding sole physical and legal custody to Tawni, (2) failing to properly calculate child support, (3) awarding Tawni a $10,000 attorney fee, and, (4) failing to grant a new trial. He also asserts the district court abused its discretion in failing to recuse itself.

## STANDARD OF REVIEW

Child custody determination are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. *Id.*

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Furstenfeld v. Pepin*, 23 Neb. App. 673, 875 N.W.2d 468 (2016).

An appellate court will uphold a trial court's ruling on a motion for new trial absent an abuse of discretion. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015).

A motion to recuse for bias or partiality is initially entrusted to the discretion of the trial court and the trial court's ruling will be affirmed absent an abuse of that discretion. *Dinges v. Dinges*, 16 Neb. App. 275, 743 N.W.2d 662 (2008).

ANALYSIS

*Custody of Minor Children.*

Steven asserts the district court erred in awarding sole legal and physical custody to Tawni. He argues:

> The undisputed facts show that the Appellee has failed these children in every category possible. As complained and proven by the Appellant, the Appellee continues to abuse the children, has allowed the children to miss a tremendous amount of school, the children are failing or doing poorly in school, are not motivated, are not cared for, missing dental treatments, have threatened suicide, have been exposed to inappropriate sexual behavior by their mother, their visitation with their father has been blocked and interfered with, their mother has lied to the authorities, and encouraged her children to lie to authorities, and filing a false protection order against Appellant.

Accordingly, he asserts that the trial court's decisions are contrary to the children's best interests and the trial court abused its discretion in failing to grant him custody. Steven argues that the district court applied the wrong legal standard in addressing "unfitness."

The legal principles governing modification of child custody are well settled. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Schrag v. Spear, supra.* A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*

Here, the district court reviewed the history of the parties, including the concerns raised during the original trial regarding each parent's fitness to parent and the discord between the parties. Then, the court considered the testimony with regard to changes in the children's lives since the time of the decree. The court specifically addressed each of Steven's areas of concern and found that, on balance, the evidence did not weigh in favor of a finding that Steven had established a material change in circumstances warranting a change of custody.

Steven asserts that Tawni has failed the children by allowing them to miss school, and perform poorly. The court found that, based on the totality of the evidence, the children's performance in school, while not perfect, is not deficient. Further the court found that Steven failed to prove that any academic shortcomings were due to Tawni's inattentiveness.

The evidence shows that Tawni is an involved parent and is active in attending concerts, parent-teacher conferences, and other school events. She testified that she and her grandmother work with the two younger children at home, and the principal testified that their attendance is average and their academic performance has steadily improved. Steven is less active in attending the children's school-related activities and programs and has little or no contact with the children's

- 4 -

schools or teachers. The evidence shows that Brekkan struggles in certain subjects, and that Steven has been involved in assisting Brekkan with his math. However, Steven's involvement in the children's education was contemplated at the time the decree and the parenting plan were prepared. The district court noted that the evidence showed the children were settled into the Auburn school district and the evidence, as a whole, does not support a change in custody based on their children's educational achievement.

Steven asserts the children are not well cared for, citing concerns for the children's mental health as well as their dental care. The evidence shows the children have engaged in counseling at Blue Valley Behavioral Health, a counseling center in Auburn, and that Tawni has been more actively involved in the counseling process than Steven. The trial court noted when one child made a statement which could be construed as suicidal in nature, Steven chose to "inform all interested parties except [Tawni]" about what could be a very serious issue.

Tawni is a registered nurse who regularly takes the children to the doctor during periods of illness, and she is the primary person to take Brekkan to the orthodontist. She testified that she has discussed the children's weight and physical fitness with their doctor and was told that they are "right on track." As a dental professional, Steven is the parent to assist the children with dental care, and the evidence shows that he continues to do so. It appears Tawni's record with regard to orthodontic appointments and supervision of brushing may not be perfect, but there is no evidence that Steven communicated with her regarding his concerns. Upon our review, we find that it is troubling that Steven has not historically disclosed information to Tawni which affects the health and well-being of the children, and which would assist Tawni in supporting the children as the primary custodian. This pattern of conduct is not in the children's best interests, and does not support a finding that Steven is the better parent to care for the children on a full-time basis.

Steven asserts Tawni has blocked and interfered with his parenting time, primarily his telephone and text contact with the children. Steven testified that the decree provided for telephonic visitation for at least 10 minutes and Tawni would take the phone from the children and hang up mid-conversation once the call reached 10 minutes. Steven testified that he has been in regular telephone contact with the children by telephone and through the Xbox SmartGlass application, although Tawni has limited his ability to contact the children through SmartGlass. Steven acknowledged that he was aware the children's access to SmartGlass was limited due to Tawni's concerns regarding their academic performance. Tawni testified that she did not prevent the children from speaking with Steven on the telephone, but she did limit their access to SmartGlass for disciplinary reasons, and to ensure that they were getting enough sleep. The evidence showed that Steven did not regularly exercise his weeknight parenting time with the children because of his work schedule and the time involved in traveling to Auburn.

In response to these parenting time concerns, the trial court adjusted the order to clarify the length and frequency of allowable telephonic visitation, and adjusted the weeknight parenting schedule to accommodate Steven's work schedule. We find this change was not an abuse of discretion and the evidence regarding visitation does not support a finding of a material change in circumstances warranting a change in custody.

Steven asserts there are concerns with several aspects of Tawni's personal life which affect the children. The trial court considered Steven's assertion that Tawni and her grandmother used

inappropriate discipline toward the children, and Tawni's denial of any inappropriate or abusive means of punishment.

The trial court considered the evidence that explicit pictures were taken by Tawni and were maintained on a shared Cloud with electronic devices her children had access to. Tawni testified that she was not aware these pictures were accessible to the children. The court questioned Tawni's decision-making in allowing the pictures to be taken, and maintaining them in a media over which she did not have complete control. The court found this factor weighed in support that a change in circumstances existed which called into question her fitness and the best interests of the children. However, the court determined that, given the totality of the circumstances, this factor alone did not overcome the court's determinations with regard to the numerous other factors considered which strongly favored retention of custody by Tawni.

The trial court found no material change in circumstances had been proven demonstrating that Tawni was unfit for continuing custody or that the best interests of the children would be best served by granting custody to Steven. In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. *Schrag v. Spear, supra.* Upon our de novo review we find the trial court did not abuse its discretion.

*Child Support.*

Steven asserts that the trial court erred in failing to "properly calculate the child support obligation." In its order the trial court noted that Steven sought a new child support calculation based on a change of custody and Tawni made no request for a change in child support. Having found that no change in custody had been entered, the court found there was no issue for child support.

Steven argues that, even if Tawni was awarded child support, the court should have modified his child support obligation based upon the testimony and pay stubs provided at the modification hearing. Steven asserts "the fact that the court would not even consider Appellant's request for a child support calculation is further evidence of the trial court's bias against Appellant." This argument suggests that Steven expected the court to consider a modification of his child support obligation, even if Tawni were to retain custody. In his complaint to modify, Steven sought an award of "sole legal and physical custody of the minor children herein, for the Plaintiff to pay the Defendant child support pursuant to the Nebraska Support Guidelines," reasonable visitation, and other relief as the court saw fit. He did not allege or argue that there had been a material change in circumstance warranting a modification of his child support payment or request a decrease in his child support obligation in the event that Tawni retained custody. This issue was not raised before the district court, therefore we do not address this argument. See *Clark v. Clark*, 275 Neb. 276, 746 N.W.2d 132 (2008) (an appellate court will not consider an issue on appeal that was not passed upon by the trial court).

Steven asserts the trial court failed to attach a copy of the child support calculations as required by Neb. Ct. R. § 4-203. The rule states that "All orders for child support, including modifications, must include a basic income and support calculation worksheet 1, and if used,

worksheet 2 or 3." *Id.* The court's order on July 20, 2016 is not an order of child support or a modification. The order states "Child support shall remain set as previously ordered in the decree of dissolution." The court specifically refers to the decree of dissolution as the operative order with regard to child support and makes no additional findings on the subject. We find the argument, that the trial court was not in compliance with the Supreme Court Rules, is without merit.

*Attorney Fee.*

Steven asserts the trial court abused its discretion in awarding an attorney fee of $10,000 to Tawni. He asserts the court's award is "clearly inappropriate," arguing that it was a "disguised punishment for Appellant being concerned about his children." In arguing that the award of attorney's fees is clearly inappropriate, he references Neb. Rev. Stat. § 43-1259 (Reissue 2016) of the Uniform Child Custody Jurisdiction and Enforcement Act. However, Section 43-1259 does not control an award of attorney fees in a modification of a dissolution decree.

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Furstenfeld v. Pepin*, 23 Neb. App. 673, 875 N.W.2d 468 (2016).

The Nebraska Supreme Court has held that attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. Thus, there was authority, in this modification of a dissolution decree case, for the award of attorney fees. *Id.*

It has been held that in awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount in controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id.*

In determining that an award of fees was warranted, the court noted that "a review of the evidence demonstrates that very little of the evidence adduced by Defendant concerned the period of time prior to the filing of the complaint to modify," and that the majority of the evidence concerned issues that had arisen since the filing of his complaint.

Upon our review of the evidence, the court's observation was correct. Much of the evidence presented dealt with the period after the complaint was filed, or the evidence was ambiguous as to the operative date. For example, Steven refers to his testimony that he kept a log of the times Tawni "interfered" with his visitation or communication with the children, but the log was not offered or entered as evidence and he did not testify as to the dates of Tawni's alleged interference.

Steven clearly demonstrated his concern for his children's academic performance and school attendance, but on the whole, he failed to prove that there had been a material change in circumstances warranting a change in custody. The record does not support Steven's assertion that the court awarded fees as a "punishment." The court noted that a short period of time had passed between the filing of the mandate and Steven's filing of the current complaint to modify. However, it appears the court was merely observing that, based on the evidence presented, there was not

sufficient evidence to support filing for a modification of custody so quickly. This fact, coupled with the ultimate conclusion that there had not been a material change in circumstances warranting a change in child custody shows that an award of attorney fees is not an abuse of discretion.

Tawni provided an accounting of the fees, which were incurred between March 2015 and May 2016, for services rendered by her attorney in response to the current action. The itemized list included the date, the hourly rate charged, and the amount of time her attorney spent drafting documents and conducting the necessary correspondence and discovery. The document also included a projection of the time which would be spent in May and June 2016 preparing for and conducting the two-day trial. The total cost to Tawni was just over $15,000. We find the trial court's award of a portion of her attorney fees, in the amount of $10,000, was not an abuse of discretion.

*Motion for New Trial.*

Steven asserts the district court abused its discretion by failing to grant a new trial. Steven's motion for new trial alleged that "the findings of the court were contrary to the law, the proceedings of the court were irregular, the verdict was not supported by the evidence, and that based upon newly discovered evidence that was not available for trial, a new trial should be granted." Attached to the motion was an email sent from the guardian ad litem to Steven which stated he did not "necessarily agree with the court's ruling." Steven argued there was a question as to the procedure followed during Brekkan's in-camera testimony and what questions were asked of him. The court overruled the motion for new trial.

On appeal, Steven asserts the court abused its discretion, arguing that there were multiple grounds for new trial. Steven argues that it is unclear whether the court asked the questions that were presented, and whether the statements given matched the findings of the court. It is clear that Brekkan's was not the only testimony offered to the court, and that it was not the only testimony upon which the trial court based its decision.

In addition, a party cannot complain of an error which that party has invited the court to commit. *Damrow v. Murdoch*, 15 Neb. App. 920, 739 N.W.2d 229 (2007). One cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong. *Id.* Brekkan expressed his desire for his testimony to remain confidential and multiple steps were taken at trial to ensure that it would be. The parties agreed that Brekkan would testify in camera, outside of the presence of the parties and their attorneys, and the parties agreed that Brekkan's testimony would be sealed from all but a reviewing court. The court also anticipated that specific findings might be necessary with regard to Brekkan's testimony, and the parties agreed that any such findings would also be sealed. No objection was made by either party. To the extent that Steven argues that a motion for new trial should have been granted because he cannot be sure of the content of Brekkan's testimony, we find this assignment of error is without merit.

Steven also argues that "the Court and Guardian ad Litem nonetheless waived the confidentiality of Brekkan's testimony by stating that the trial court did in fact ask the questions presented." In the email, attached to Steven's motion for new trial, the guardian ad litem wrote "I did try and keep track of the issues [Steven's attorney] wanted to have addressed and I believe the Judge allowed for Brekkan to address all of these issues in his testimony." It is clear that the

guardian ad litem's statement was made to assure Steven, who had waived the ability to review Brekkan's testimony, that Brekkan was given the opportunity to weigh in on the topics that were of particular importance to the parties. The record is devoid of any evidence that the court or the guardian ad litem disclosed the content of Brekkan's testimony, therefore this argument is without merit. Upon our review, we find the district court did not abuse its discretion in overruling Steven's motion for new trial.

*Recusal.*

On May 27, 2015, Steven filed a "Motion to Recuse" alleging that the trial judge in this case was the same judge who presided over the "lengthy contested trial." Steven alleged that he did not believe a fair trial could be had in this matter before the assigned judge, referring specifically to Neb. Ct. R. 5-302.11(A)(1) and (A)(6)(d). Following a hearing, the trial judge overruled the motion to recuse. On December 31, 2015, Steven filed a "Second Motion to Recuse and to Disqualify," and this motion was withdrawn on January 20, 2015 without consideration by the trial court. Therefore, we will review only the denial of the original motion to recuse.

A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *Dinges v. Dinges, supra.*

Steven referred to the Nebraska Supreme Court rules in asserting the judge "has a personal bias or prejudice concerning a party," and that he had "Previously presided as a Judge over the matter . . . " in stating that the trial judge "must recuse and disqualify himself from any further proceedings in this matter."

Neb. Ct. R. 5-302.11 states:

(A) A judge shall disqualify himself or herself in any proceedings in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding . . . .
(6)(d) The judge previously presided as a judge over the matter in another court or in any adjudicatory capacity.

The trial judge in this case presided as a judge over the original trial in the *same* court, and the Nebraska Supreme Court rules did not require him to recuse himself of this or any further proceedings in the district court for Sarpy County on the basis of § 5-302.11(6)(d). This argument is meritless.

Steven argues that the trial court "obviously was tainted and biased before trial started" because the first few pages of the opinion focused on the history of the parties, and the court observed that the complaint to modify closely followed the date the mandate was filed in the previous appeal. As previously discussed, in modification cases, the court must consider whether there has been a material change in circumstances. Thus, it is necessary for the court to consider

the history of the parties, and the circumstances, as they existed, at the time of the previous order. Upon our review, we find the trial court did not err in overruling the motion to recuse on this basis.

In his brief, Steven supports his assertion that the judge should have been recused because of a bias against him by specifically referring to a portion of the record in which the trial judge stated that he had ceased taking notes because "it's all a rehash of stuff we have been through." Steven argues that the judge was referring to the "original divorce trial."

At the point where the trial judge made the statement, Steven was testifying as a rebuttal witness and was being cross-examined by Tawni's counsel. Steven's counsel said, "If I might interpose an objection here. If [Tawni's counsel] is now saying he never received my letter with the new address, I would like to know." To which the trial court replied:

> Well, I'm just going to ask -- I mean, the vast majority of these questions had nothing to do with what the rebuttal is. I am not even taking notes because it's all a rehash of stuff we have been though; has nothing to do with rebuttal. So please confine your questions to what was brought up in rebuttal and then finish.

Viewing the full text of the court's statement, we find the trial judge was clearly not focused on the original divorce proceedings. Rather, the statement was in reference to narrowing the scope of Steven's testimony as a rebuttal witness in the instant case. Steven's argument to the contrary is a blatant misrepresentation of the record before us. We have reviewed the record and find nothing in the court's statements showing bias. We find no abuse of discretion in the denial of Steven's motion to recuse.

## CONCLUSION

Upon our de novo review, we find the district court did not abuse its discretion in finding there was not sufficient evidence of a material change in circumstances which warranted a change in the custody or child support orders. The district court did not abuse its discretion in awarding attorney fees, in overruling Steven's motion for new trial, or in overruling Steven's motion to recuse. Therefore, we affirm the findings of the district court.

AFFIRMED.